580 So.2d 518 (1991)
Theo H. HARVEY, Jr.
v.
DIXIE GRAPHICS, INC. and Touche Ross & Co.
No. 90-CA-1912.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1991.
*519 Robert E. Tarcza, David B. Vitter, Feingerts & Kelly, P.L.C., New Orleans, for appellant.
H. Paul Simon, Charles C. Coffee, Simon, Peragine, Smith & Redfearn, New Orleans, for appellees.
Before SCHOTT, C.J., and LOBRANO and WARD, JJ.
LOBRANO, Judge.
The issue in this accountant malpractice case is the date prescription began to accrue. Plaintiff/appellant Theo H. Harvey, Jr. (Harvey) sued defendant/appellee Touche Ross and Company[1] (Touche Ross) for accountant malpractice. Relying upon a Commissioner's recommendation, the Civil District Court for the Parish of Orleans granted the exception of prescription and dismissed Harvey's suit. Harvey filed this timely appeal.

FACTS:
The facts pertinent to resolving the prescription issue are as follows.[2] Harvey seeks to recover the sums he paid the Internal Revenue Service in compromise of the tax deficiencies the IRS claimed were due because of the alleged faulty returns prepared by Touche Ross for Harvey Press Inc. (HPI). Harvey formerly owned all of the outstanding shares of HPI, and by agreement dated June 12, 1981, sold all of them to Dixie Graphics, Inc. (Dixie). Harvey later repurchased the shares on November 19, 1982. Three days later, November 22, 1982, Harvey sold the shares to Rebsamen Companies, Inc. (Rebsamen).
While Dixie owned HPI, Dixie engaged Touche Ross to prepare the income tax returns for itself and its subsidiaries, including HPI. Harvey alleges that because of Touche & Ross's negligence, the consolidated return substantially understated HPI's tax. He asserts that although Dixie and Touche Ross were aware of problems with the IRS as early as April, 1982, he was not notified by the IRS until July 1984. At that time, Harvey and HPI were notified that the IRS was examining the tax returns of Dixie and its present and former subsidiaries. Soon thereafter, a proposed tax liability of $157,438.00 was asserted against HPI. However, because the matter was compromised, no actual tax assessment was ever issued. Harvey made the first payment toward the tax liability in December, 1986, and ultimately paid the IRS the compromised figure of $91,542.00 in tax deficiencies.[3]
Harvey filed suit against Dixie and Touche Ross on June 15, 1987. On April 10, 1990, Touche Ross filed a peremptory *520 exception of prescription.[4] The exception was heard before a Commissioner who recommended that it be sustained. Harvey filed an exception to the Commissioner's report which was heard in the Civil District Court for the Parish of Orleans on July 31, 1990. By judgment dated August 8, 1990, the trial judge upheld the Commissioner's recommendation and dismissed Harvey's claim against Touche Ross with prejudice.
Harvey perfects this appeal and presents two arguments. First he asserts that, even though he was notified in July of 1984 that the IRS was proposing unfavorable adjustments to HPI's tax return, he did not actually sustain damage to begin the prescriptive period until he compromised the claim and made the first payment on December 29, 1986. Second, he argues that the doctrine of contra non valentum suspended the tolling of prescription.
For the following reasons, we reject both arguments and affirm.
As a general rule, in the absence of a guaranteed specific result, the action for accountant malpractice is one in tort, subject to the prescriptive rules of Civil Code Article 3492. Carey v. Pannell, Kerr, Foster, 559 So.2d 867 (La.App. 4th Cir.1990). That article provides: "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." Based on plaintiff's allegations, it is clear the one-year prescriptive period is applicable in this case.
We find the recent Supreme Court case of Braud v. New England Insurance Company, 576 So.2d 466 (La.1991), to be controlling. In that case, the plaintiffs sued their former attorney for alleged malpractice in obtaining default judgments in their favor. Those default judgments were attacked in a nullity action filed on April 30, 1985. However, the attorney-malpractice suit was not filed until September 12, 1986. The plaintiffs argued that prescription did not begin to run until they settled the nullity suit on August 13, 1986. They asserted that this was the date that they sustained damage. In rejecting this argument, the Supreme Court held that "[a]ny appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue." 576 So.2d at 468 "Braud sustained appreciable and actual harm when the validity of his right or asset was attacked by a third party because of the alleged negligence of his former attorney and he was compelled to incur and pay attorney fees, legal costs and expenditures." Id.
In the instant case, Harvey was notified of the tax problems in July of 1984. In November of 1984 he sent his accountant and attorney to Nashville to meet with a representative of the IRS. Harvey, in his deposition testified:
"When they [the accountant and attorney] came back, they brief [sic] me on somewhat of the case and what the position was, and that the tax was absolutely disallowed and should not have ever been prepared."
Thus, it is clear that in November of 1984, at the latest, Harvey was aware that the tax return prepared by Touche Ross was not approved by the IRS, was subject to serious dispute and that damage, at least to the extent of accountant and attorney fees, was inevitable. The instant suit was not filed until June 15, 1987. Relying on the holding in Braud, we must conclude that prescription has tolled.
Harvey argues that because the matter was compromised before an actual notice of tax deficiency was issued by the IRS, Braud is distinguisable. We disagree. Braud made it clear that once "appreciable and actual harm" results from the alleged malpractice, prescription begins to accrue. Although the Court in Braud equcated the "appreciable harm" with the actual filing of the nullity suit, we do not believe that holding means formal, legal action is required by the IRS to begin prescription's *521 toll. As we noted above, the appreciable harm sustained by Harvey occurred when he sent representatives to meet with the IRS in November of 1984 because of the tax returns prepared by Touche Ross.
Harvey, like the Braud plaintiffs, also argues that the doctrine of contra non valentum suspended the running of prescription. He asserts that a suit against Touche Ross for malpractice, while at the same defending their work to the IRS, would have resulted in inconsistent positions suspending the prescriptive period. Like the Braud plaintiffs, his argument must fail. Our Supreme Court dismissed this assertion pointing out the numerous state and federal procedural rules which permit inconsistent pleadings. For the same reason, we must reject Harvey's argument.
Accordingly, the trial court judgment is affirmed.
AFFIRMED.
SCHOTT, C.J., dissents with reasons.
SCHOTT, Chief Judge, dissenting:
In the Braud case the Supreme Court held that the filing of the action of nullity triggered the running of prescription. For prescription to run in the instant case there had to be some formal action taken against Harvey by the IRS which was equivalent or at least analogous to the filing of the suit in Braud. The only actions taken were the assertion of a proposed tax liability and drawn out negotiations between Harvey and the IRS culminating in a settlement. Without a doubt there was a notice of demand by Citicorp to Braud and negotiations between these parties prior to the filing of the suit for nullity, but prescription did not begin to run until the suit was filed.
Under Braud prescription might begin to run with the assessment by the IRS of a deficiency against Harvey because this would be analogous to the filing of the suit in Braud. I respectfully submit that Braud does not support the result reached by my colleagues.
NOTES
[1] Harvey also sued Dixie Graphics, Inc. However, they are not a party to this appeal.
[2] Our recitation of facts is based on the allegations in Harvey's petition. For purposes of our discussion we assume they are correct.
[3] Harvey was bound to pay on behalf of HPI because of his indemnification agreement with Rebsamen.
[4] Touche Ross also filed an exception of no right of action which was not decided by the trial court.